UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

DAVID LEE,

        Plaintiff,

    v.                                       Case No. 17-CV-1617

UL LLC,

        Defendant.

**BRIEF IN SUPPPORT OF JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT, PLAINTIFF'S SERVICE AWARD, CLASS COUNSEL'S ATTORNEYS' FEES, AND NOTICE, AND FOR CERTIFICATION FOR SETTLEMENT PURPOSES**

## <u>INTRODUCTION</u>

On November 20, 2017, Plaintiff, David Lee ("Lee"), on behalf of himself and all other similarly situated current and former exempt Field Engineer, Associate Field Engineer, and Senior Field Engineer employees of UL, filed his Complaint with this Court, alleging that UL improperly classified all such employees as exempt for overtime compensation purposes in violation of the Fair Labor Standards Act ("FLSA") ("the Lawsuit"). (ECF Nos. 1, 33.) Lee's claims are pursuant solely to the FLSA – there is no Wisconsin state law component. (*See* ECF Nos. 1, 33.) Thus, Lee brought this case as a putative collective action requiring that individuals affirmatively opt-into the Lawsuit to participate in the same.

Now, Lee and Defendant, UL LLC ("UL"), jointly move this Court for approval of the parties' settlement of the Lawsuit in accordance with their Settlement Agreement, attached hereto as **Exhibit A** ("Settlement Agreement"), and the Settlement Payments called for thereunder, as well as for approval of Plaintiff's Service Award, Class Counsel's attorneys' fee award, and the

parties' proposed Notice of FLSA Collective Action Settlement, attached hereto as **Exhibit B** ("Notice").

Further, and for settlement purposes only, the parties seek certification under the FLSA of a collective of all persons who are or have worked at and/or been employed by UL in the positions of Field Engineer, Associate Field Engineer, and Senior Field Engineer from April 1, 2017 to December 31, 2019. To date, no individuals other than Lee have filed opt-in forms and/or have consented to join the Lawsuit. (Declaration of James A. Walcheske ("Walcheske Decl."), ¶ 23.)

The Settlement Agreement provides a total maximum settlement payment of $1,620,000.00, inclusive of a service award to the Named Plaintiff, David Lee, and Class Counsel's attorneys' fees and costs. The parties believe that the Settlement Agreement is fair and reasonable because it fully and adequately satisfies this Court's criteria for collective action settlements. As such, the parties respectfully request that this Court:

(1) Approve the terms and conditions as memorialized in the parties' written Settlement Agreement as fair, reasonable, and adequate;

(2) Order Final Certification for settlement purposes of a collective action under FLSA, 29 U.S.C. § 216(b);

(3) Approve Plaintiff's Service Award as fair and reasonable;

(4) Approve Class Counsel's attorneys' fee award as fair and reasonable;

(5) Approve the Notice that will be sent to the members of the putative collective, which is attached hereto as **Exhibit B**;

(6) Order that the Notice constitutes the best notice practicable under the circumstances, including individual notice to all members of the collective who

2

can be identified with reasonable effort, and that the Notice constitutes a valid, due, and sufficient notice to members of the collective in full compliance with the requirements of applicable law;

(7)     Authorize the sending of and order the Settlement Administrator to distribute the Settlement Payments called for by the Settlement Agreement along with the Notice ("the Notice Packet") to all members of the putative collective;

(8)     Order that each individual who wishes to make a claim and opt-in under this Settlement must cash, deposit, or otherwise negotiate his or her Settlement Payment per the Notice and within sixty (60) calendar days of the date the Settlement Administrator mailed the Notice Packet;

(9)     Enter judgment or, alternatively, tentatively schedule a telephonic hearing approximately one hundred and twenty (120) days after the Court enters its Approval Order to be held only in the event the Court desires to discuss the status of the settlement administration and, otherwise, to enter judgment, and dismiss this matter with prejudice; and

(10)    In the event the Court chooses to tentatively schedule a telephonic hearing with the parties, Order that at least ten (10) calendar days prior to the tentatively scheduled telephonic hearing, Class Counsel shall file an update with the Court regarding Settlement Administration.

## **PROCEDURAL HISTORY**

On November 20, 2017, Lee, on behalf of himself and all other similarly situated current and former exempt Field Engineer, Associate Field Engineer, and Senior Field Engineer employees of UL, filed his Complaint with this Court, alleging that UL misclassified all such

3

employees as exempt for overtime compensation purposes in violation of the FLSA. (ECF Nos. 1, 33.) Lee sought to obtain relief under the FLSA for unpaid overtime compensation, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or any such other relief the Court deemed appropriate. (ECF Nos. 1, 33.)

In or about January 2018, counsel for the parties first began conferring regarding the possibility of resolving the Lawsuit. (Walcheske Decl., ¶ 11.) In or about May 2018, the parties began substantive communications to that end, resulting in their filing of their Joint Motion to Stay Proceedings Pending Settlement Discussions with the Court on August 9, 2018, (ECF No. 21), requesting a sixty (60) day stay of all deadlines in the case. (*See* Walcheske Decl., ¶ 13.) The Court granted the parties' motion and requested a status update by the end of the sixty (60) day period. (ECF No. 22.)

On October 10, 2018, the parties requested a thirty (30) day extension of their requested stay while they continued to work toward a resolution of the Lawsuit, (ECF No. 23), which the Court granted. (ECF No. 24.) On November 13, 2018, the parties provided a status update to the Court informing it that after sharing information and engaging in discussions toward a resolution, the parties were unable to settle the Lawsuit and had reached an impasse. (ECF No. 25.)

Approximately six (6) months later in May 2019, the parties began discussing the possibility of engaging the assistance of a mediator to resolve the Lawsuit. (Walcheske Decl., ¶ 14.) To that end, Lee's counsel outlined information that would be necessary to engage in mediation, namely time records, wage data, and dates of employment for all members of the putative collective. (*Id.*) UL provided the requested records on May 31, 2019.[1] (*Id.* at ¶ 15.)

---

[1] On June 27, 2019, UL provided additional, updated time records for all members of the putative collective (*Id.*)

Shortly thereafter, on June 4, 2019, the parties jointly requested referral to mediation, (ECF No. 42), and further stipulated to a stay of Lee's deadline for filing for conditional certification, pending the outcome of mediation. (ECF No. 43.) On June 7, 2019, mediation was scheduled in this matter for August 27, 2019. (ECF No. 45.)

Between May 31, 2019, when UL first provided time, wage, and employment data for all members of the putative collective, and the mediation on August 27, 2019, the parties engaged in extensive document and data review and damages calculations and also began formulating the terms and conditions of any potential settlement. (Walcheske Decl., ¶ 13.) Through the parties' significant efforts, they, in advance of mediation, were able to agree on the general framework of the collective, the opt-in period and notice procedures, and a division of labor regarding the settlement and approval process. (*Id.* at ¶ 17.)

On August 27, 2019, the parties engaged in a full day of mediation and, ultimately and with the assistance of Magistrate Judge Sickel, were able to reach a resolution. (ECF No. 46.) Indeed, the parties mediated for approximately eight (8) hours. (*See id.*)

Thereafter, and through the date of this Motion, the parties have continued devoting significant time and effort to crafting satisfactory settlement and settlement approval documents and counsel expects to continue expending time and attention to this matter through its ultimate conclusion. (Walcheske Decl., ¶ 18.)

The final result of the parties' efforts is embodied as the parties' Settlement Agreement.

## **SETTLEMENT HISTORY**

Between approximately May 2018 and August 2019 – a fifteen (15) month period – the parties engaged in ongoing, thorough, and substantive settlement negotiations, culminating in their agreement in principle on August 27, 2019. (Walcheske Decl., ¶ 13.) During this period, the

5

parties, specifically: communicated, negotiated, and argued regarding the scope of the putative collective; exchanged and argued legal positions regarding the collective, the scope of the collective, certification under the FLSA, the scope of information to be disclosed, the job duties and responsibilities of putative collective members, the (in)appropriateness of the putative collective's classification as exempt for overtime compensation purposes, and the "correct" method of computing the putative collective's damages; communicated and negotiated the terms, conditions, timelines, processes, and procedures of settlement; exchanged substantial information, data, and documents necessary to fully and fairly evaluate the claims of the putative collective members, including comprehensive time and payroll data for members of the putative collective; and evaluated damages calculations. (*See* Walcheske Decl., ¶¶ 12-17; *see also* ECF Nos. 21-26, 34-41, 46.)

Respectively, the parties each believed in their positions: Lee firmly believed that he and the putative collective were misclassified as exempt from overtime and, therefore, firmly believed in the viability of his collective cause of action against UL under the FLSA; and UL staunchly denied Lee's allegations and any and all liability and damages of any kind to anyone with respect to these alleged facts or the cause of action asserted in Lee's Complaint. (Walcheske Decl., ¶ 19.) However, to avoid the burden, expense, and uncertainty of continued litigation, the parties concluded that it was in their best interests to resolve the litigation by entering into the Settlement Agreement which they now request that this Court approve. (*Id*.)

## THE SETTLEMENT AGREEMENT

The parties' Settlement Agreement contains the following summarized terms, conditions, timelines, processes, and procedures of settlement.

# I. THE FLSA COLLECTIVE

Lee brought this lawsuit on behalf of himself and all others similarly situated for alleged overtime wages owed under the FLSA. This was Lee's sole cause of action. (*See* ECF No. 33.) Thus, for purposes of settlement only, the parties seek final collective certification under the FLSA. The collective (the "FLSA Collective Class") is defined as follows: All persons who are or have worked at and/or been employed by UL in the positions of Field Engineer, Associate Field Engineer, and Senior Field Engineer in the United States from April 1, 2017 to December 31, 2019. **Exhibit A**, ¶ 1.10.

# II. THE TERMS, CONDITIONS, TIMELINES, PROCESSES, AND PROCEDURES OF SETTLEMENT

The general terms, conditions, timelines, processes, and procedures of the Settlement Agreement are summarized as follows.

## A. The Claims and Causes of Action Covered by This Settlement

The parties agree that any claims, damages, or causes of action arising out of or related to this matter will be settled and compromised as between the individuals who choose to join this Lawsuit and consent to participate in the settlement of this Lawsuit by cashing, depositing, or otherwise negotiating his or her Settlement Payment. **Exhibit A**, ¶¶ 1.16, 1.20.

Those who do not wish to participate simply do not cash, deposit, or otherwise negotiate their checks. *See id.* at ¶¶ 1.16, 6.1.1. Individuals who do not participate are not bound by any decision of the Court and do not release any claims they may hold against UL. *See id.* at ¶ 6.1.1.

## B. The Amount of the Settlement

The Settlement Agreement provides a total maximum settlement payment of $1,620,000.00, inclusive of a Service Award to Lee and Class Counsel's attorneys' fees and costs

("the Maximum Settlement Amount"). The parties' agreed-upon Service Award to Lee is not to exceed $20,000.00, *id.*, at ¶ 1.22, and Class Counsel's agreed-upon attorneys' fees are not to exceed $540,000.00. *Id.* at ¶ 4.3. Class Counsel has agreed to waive reimbursement of its litigation costs. *Id.* Thus, the amount of the Settlement to be distributed to the Collective totals $1,060,000.00.

### C. The Collective's Settlement Payments

Settlement Payment checks will be sent along with the Notice as part of the Notice Packet that each member of the putative collective will receive from the Settlement Administrator. The Settlement Payment will be individually calculated by the parties' Settlement Administrator for each member of the collective and is a reflection of each individual's hours worked in excess of forty (40) hours per workweek in relation to the total number of such hours worked by all members of the putative collective. *See id.* at ¶¶ 1.17-18, 4.1.

Specifically, each individual's Settlement Payment is the product of multiplying each individual's "qualifying hours" by the "qualifying hour value." *Id.* at ¶ 4.1. Each individual's "qualifying hours" is the sum of all hours worked by that individual exceeding forty (40) hours in a workweek between April 1, 2017 and December 31, 2019 (as determined by UL's internal time records). *Id.* at ¶ 1.17. The "qualifying hour value" is the quotient resulting from dividing the Net Settlement Amount by the total "qualifying hours." *Id.* at ¶ 1.18.

These payments reasonably represent what each member of the collective would be legally entitled to in overtime compensation under the FLSA during the period covered by the parties' settlement if Lee ultimately prevailed on liability in this matter.

The back of each Settlement Payment check will contain a restrictive endorsement reaffirming the individual's understanding that by cashing, depositing, or otherwise negotiating

8

the check, he or she is joining the collective and releasing his or her wage and hour claims and shall read substantially as follows: "This check is issued in full and final settlement of *Lee v. UL LLC*, No. 1:17-cv-01617-WCG (E.D. Wis.). By endorsing, cashing, or otherwise negotiating this check, I: (1) consent to join the Action as a party under the Fair Labor Standards Act for purposes of settlement; and (2) release UL LLC and all other Released Parties from the Released Claims set forth in the Settlement Agreement." *Id.* at ¶ 6.1.2. The full release effectuated by joining the collective is set forth in the Notice that each individual will receive. **Exhibit B**.

Individuals who wish to participate in the collective and share in the Settlement do so by simply cashing, depositing, or otherwise negotiating their Settlement Payment checks. Those who do not wish to so participate simply do not cash, deposit, or otherwise negotiate their checks. They are then not a part of the collective, are not impacted by the Settlement Agreement, and do not release any claims against UL.

### D. Reclassification of the Collective

In his Complaint, Lee argued that he and all those similarly situated were misclassified as exempt for overtime compensation purposes. (*See* ECF No. 33.) While UL maintains that all such individuals were and are properly classified as exempt and denies any and all liability in this matter, UL has agreed to reclassify the positions of Field Engineer, Associate Field Engineer, and Senior Field Engineer as non-exempt for overtime compensation purposes. **Exhibit A**, ¶ 4.4.

### E. The Settlement Administrator

Upon the Court's approval, notice and settlement administration will be conducted by Simpluris, Inc. *Id.* at ¶ 1.25. UL will directly pay for the costs of the Settlement Administrator, separate and apart from the settlement payment, in an amount not to exceed $20,000.00. *Id.* at ¶ 1.24.

9

**F.     The Notice and Opt-In Processes, Procedures, and Timelines**

Within thirty (30) days of this Court's Approval Order, UL will transfer the Maximum Settlement Amount to a Qualified Settlement Fund ("QSF") established by the Settlement Administrator, who then serves as the trustee of the QSF and shall act as a fiduciary with respect to the handling, management, and distribution of the Maximum Settlement Amount. *Id.* at ¶ 3.4.1.

Within forty-five (45) days of this Court's Approval Order, UL shall confidentially provide the Settlement Administrator with the Collective List and any other information the Settlement Administrator requests to conduct settlement administration. *Id.* at ¶ 3.4.2.

Within sixty (60) days of this Court's Approval Order, the Settlement Administrator will distribute the Notice Packet containing the Notice and the individual's Settlement Payment check via First Class U.S. Mail. *Id.* at ¶ 3.4.3. The Notice informs individuals of: the Settlement; the dispute underlying the Settlement; the Settlement Payments and how they were calculated; the effect of accepting or not accepting the Settlement Payment; an explanation of claims being released by participating in the Settlement; Class Counsel's attorneys' fees; and where to obtain additional information. **Exhibit B**.

Those who wish to opt-into the collective have sixty (60) days from the date the Settlement Administrator mailed the Notice Packet to endorse, cash, or otherwise negotiate their checks. **Exhibit A**, ¶¶ 3.4.4, 3.4.5. Those who do not wish to participate simply do nothing. ***See id.*** Monies not endorsed, cashed, or otherwise negotiated will remain UL's property and will be returned to UL within ninety (90) days after the last date the Settlement Administrator (re-)mails a Notice Packet. *Id.* at ¶ 3.4.5.

10

### G.  Lee's Service Award

The parties have agreed that Lee will receive a Service Award, subject to Court approval, in an amount not to exceed Twenty Thousand Dollars ($20,000.00). UL has agreed to and does not oppose the amount of this Award. *Id.* at ¶¶ 1.22, 4.2.

### H.  Class Counsel's Reasonable Attorneys' Fees and Costs

The parties have agreed that Lee's counsel, Walcheske & Luzi, LLC, is applying for an award of its reasonable attorneys' fees, subject to Court approval, in an amount not to exceed a total amount of Five Hundred and Forty Thousand Dollars ($540,000.00). **Exhibit A**, ¶ 4.3. Class Counsel has agreed to waive reimbursement of its litigation costs in pursuing this matter. *Id.* UL does not contest or oppose Class Counsel's attorneys' fee award. *Id.*

### I.  Release of Claims

The Settlement Agreement contemplates two (2) releases: a release of claims applicable to those who affirmatively opt-into the collective and a release of claims specific to Lee in exchange for his Service Award. The release of claims for opt-ins are through the date they cash, deposit, or otherwise negotiate their Settlement Payment checks.

Those who affirmatively opt-into the Lawsuit are subject to a release of any wage and hour claims they may have. *Id.* at ¶¶ 1.20, 6.1.1. Specifically, such individuals release any and all federal, state, and local wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrued or accrue on any date from November 20, 2014, through the date such individuals cash, deposit, or otherwise negotiate their Settlement Payment checks, for wages that in any way arise from or relate to their employment at

11

UL. *Id*. at ¶¶ 1.19-20, 6.1.1. Those who do not opt-in to the Lawsuit do not release any claims against UL. *Id*. at ¶ 6.1.1.

Members of the putative collective are informed of this release via the Notice as well as by the restrictive endorsement written on the back of each Settlement Payment check.

Lee, in exchange for the parties' agreed-upon Service Award, also generally releases all claims against UL of which he knows or reasonable should know as of the date of the Court's Approval Order. *Id*. at ¶ 6.2.

## ONE-STEP APPROVAL OF THE PARTIES' SETTLEMENT IS APPROPRIATE

Courts generally favor resolution of class action litigation by settlement, *see Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996), and settlements in FLSA collective cases must be approved by the court. *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010); *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (stating that settlement of FLSA cases require court approval to be valid and enforceable.)

"Collective actions under the FLSA are different than class actions authorized by Federal Rule of Civil Procedure 23, because in FLSA cases the plaintiff is given notice and an opportunity to *opt in*, rather than notice and an opportunity to *opt out*." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (emphasis in original); *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). "Potential class members who choose not to opt in are not bound by the Court's decision," *Jirak*, 566 F. Supp. 2d at 847, and one's decision to not opt-into an FLSA lawsuit does not prevent that person from bringing his or her own lawsuit in the future. *McKenna v. Champion Int'l Corp.*,

12

747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

For such reasons, FLSA collective actions do not implicate the same due process concerns as those found in class actions authorized by Fed. R. Civ. P. 23. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Fed. R. Civ. P. class actions that are not present in FLSA collective actions). Consequently, approval of a settlement agreement solely implicating the FLSA does not carry with it the requirements of Fed. R. Civ. P. 23, such as "the facilitation of 'reasonable' notice, the obligation to hold a hearing on fairness, reasonableness, and adequacy of the settlement, and ensuring that class members have an opportunity to object to the settlement." *McInnis v. Ecolab Inc.*, No. CIV. 11-02196 SRN/JJ, 2012 WL 892187, at *2 (D. Minn. Feb. 17, 2012), *report and recommendation adopted*, No. CIV. 11-2196 SRN/JJK, 2012 WL 892192 (D. Minn. Mar. 15, 2012). Rather, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Thus, courts routinely find that a "one-step settlement approval process[2] is appropriate in collective actions brought pursuant to the FLSA." *See, e.g.,*

---

[2] In such a process, a court approves the settlement, fee award, service award, and notice in one fell-swoop, and dismisses the action. *See id.* Here, the parties have asked the Court to approve all such matters, but have left it to the Court's discretion to dismiss the case as part of its "one step" or to hold dismissal open in the event that it would prefer to await the outcome of Settlement Administration.

13

*Bainter v. Akram Investments, LLC*, No. 17-CV-7064, 2018 WL 4943884, at *2 (N.D. Ill. Oct. 9, 2018) (collecting cases).

"To determine the fairness of a settlement under the FLSA, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Burkholder*, 750 F. Supp. 2d at 994-95 (internal citations omitted). "Fairness" considerations include: (1) the strength of Plaintiff's case compared to the settlement amount (*i.e.*, the reasonableness of the settlement in light of the best possible recovery); (2) the complexity, length, expense, and risks of litigation; (3) the opinion of competent counsel; and (4) the stage of the proceedings at the time of settlement. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)*; see also Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980); *Lynn's Food Store, Inc.*, 679 F.2d at 1353. FLSA settlements are commonly approved "where it is the result of contentious arm's length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of the immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Burkholder*, 750 F. Supp. 2d at 995.

## A. The Strength of the Case Vis-à-Vis the Settlement Amount

The first settlement-approval factor is "the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653. Put differently, a court assesses the reasonableness of the settlement in light of the best possible recovery. *Burkholder*, 750 F. Supp. 2d at 995.

Here, while the parties continue to maintain a strong belief in their respective positions on the merits of Lee's claims and the possibility of collective certification, they recognize the

14

significant costs associated with litigating this case through discovery, motion practice, and trial. As a result, the parties have entered into the Settlement Agreement, attached hereto as **Exhibit A**. Moreover, the Settlement Payment received by each participating collective member is fair and reasonable because it is representative of what each individual is owed in overtime compensation, including liquidated damages, during the statutory time period.

### 1. Lee's Claims

Lee, on behalf of himself and all other similarly situated current and former individuals employed by UL in the positions of Field Engineer, Associate Field Engineer, and Senior Field Engineer, filed his Complaint with this Court, alleging that UL deprived such employees of overtime compensation as a result of UL's misclassification of such positions as exempt for overtime compensation purposes. (ECF Nos, 1, 33.) Lee sought to obtain relief under the FLSA for unpaid overtime compensation, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or any such other relief the Court deemed appropriate. (*Id.*)

### 2. UL's Defenses

UL denies Lee's allegations and any and all liability and damages of any kind to anyone with respect to these alleged facts or the cause of action asserted in Lee's Complaint. (Walcheske Decl., ¶ 19.)

### 3. Settlement Terms

In the parties' Settlement Agreement, UL has agreed to pay a Maximum Settlement Amount of $1,620,000.00, **Exhibit A**, ¶ 1.11, and to reclassify the positions of Field Engineer, Associate Field Engineer, and Senior Field Engineer as non-exempt for overtime compensation purposes. *Id.* at ¶ 4.4.

The Maximum Settlement Amount is inclusive of a Service Award to Lee and Class Counsel's attorneys' fees and costs. *Id.* at 1.11. The parties' agreed-upon Service Award to Lee is not to exceed $20,000.00, *id.* at ¶ 1.22, and Class Counsel's attorneys' fees (which UL does not oppose) are not to exceed $540,000.00. *Id.* at ¶ 4.3. Class Counsel has agreed to waive reimbursement of its litigation costs. *Id.* Thus, the amount of the Settlement to be distributed to the FLSA Collective totals $1,060,000.00.[3]

The Settlement Payment that will be sent to each putative collective member will be individually calculated by the parties' Settlement Administrator. The Settlement Payment is a reflection of each individual's hours worked in excess of forty (40) hours per workweek in relation to the total number of such hours worked by all members of the putative collective. *See id.* at ¶¶ 1.17-18, 4.1.

Specifically, each individual's Settlement Payment is the product of multiplying each individual's "qualifying hours" by the "qualifying hour value." *Id.* at ¶ 4.1. Each individual's "qualifying hours" is the sum of all hours worked by that individual exceeding forty (40) hours in a workweek between April 1, 2017 and December 31, 2019. *Id.* at ¶ 1.17. The "qualifying hour value" is the quotient resulting from dividing the Net Settlement Amount by the total "qualifying hours." *Id.* at ¶ 1.18.

These payments reasonably represent what each member of the collective would be legally entitled to in overtime compensation under the FLSA during the period covered by the parties' settlement if Lee ultimately prevailed on liability in this matter.

---

[3] There are approximately 210 members of the collective, allowing for an average recovery of approximately $5,047.62 per opt-in.

Individuals who wish to participate in the collective and share in the benefits of the Settlement do so by simply cashing, depositing, or otherwise negotiating their Settlement Payment checks. Those who do not wish to so participate simply do not cash, deposit, or otherwise negotiate their checks. They are then not a part of the collective, are not impacted by the Settlement Agreement, and do not release any claims against UL.

**B.      The Complexity, Length, Expense, and Risks of Litigation**

The complexity, expense, length, and risks of continued litigation weigh in favor of resolution and this Court approving this Settlement Agreement.

As noted herein, both sides acknowledge that the parties' respective positions are substantially complicated due to numerous disputes over factual issues and legal theories. The litigation conceivably spans hundreds of employees in multiple divisions and departments at multiple locations across multiple states. Litigation of this matter through trial would require considerable time, effort, expense, and risk for both sides, including many depositions (likely in varying states), and extensive document review and production. The time and expense associated with completing discovery, briefing, and hearings on collective certification alone would be substantial, further supporting the parties' decision to enter into Settlement Agreement at the early stages of the litigation. Moreover, if Lee does not obtain collective certification, all other Field Engineers, Associate Field Engineers, and Senior Field Engineers would bear the expense of litigating their claims on an individual basis, and UL would bear the risks and burden of defending against the same. With this in mind, from both parties' perspectives, settlement is favored at this time.

17

### C. Counsel's Opinion of the Settlement

Counsel for the parties support the settlement. As experienced practitioners in the area of employment law and wage and hour collective actions, the parties' counsel recognizes the uncertainty of proceeding through certification and trial. Counsel have negotiated and sought a fair and equitable settlement to Lee's collective claims under the FLSA that will resolve the case short of the same. Despite their divergent views regarding Lee's allegations, counsel engaged in multi-month, arms-length negotiations and ultimately reached a settlement that they consider to be fair, reasonable, and adequate given all the considerations above.

### D. The Amount of Discovery and Stage of Proceedings

As noted herein, at the time the parties reached an agreement in principle, they had already begun engaging in litigation in an effort to determine the (in)appropriateness of a collective action in the Lawsuit and, to that end, had already exchanged thousands of documents, including time and compensation records for Lee and members of the putative collective. The information exchanged between the parties allowed them to competently discuss a resolution to the Lawsuit with a full understanding of the parties' arguments, claims, and defenses, and the potential impacts each had on the potential damages of the putative collective, if any. (*See* Walcheske Decl., ¶¶ 12-17; *see also* ECF Nos. 21-26, 34-41, 46.)

As a backdrop to the parties' ongoing litigation efforts, they engaged in frequent settlement negotiations and discussions over the fifteen (15) month period prior to mediation and ultimately reaching a resolution. (Walcheske Decl., ¶ 13.)

Given the amount of time and attention the parties' devoted to the Lawsuit, they can agree that, from both parties' perspectives, settlement is favored at this time.

## THE PARTIES' PROPOSED NOTICE AND MANNER OF SERVICE
## ARE APPROPRIATE AND SHOULD BE APPROVED

Notice of FLSA claims must give potential collective members enough information to make informed decisions about whether to participate. *See, e.g., Hoffmann-La Roche Inc.*, 493 U.S. at 170.

Here, the parties' Notice, attached hereto as **Exhibit B**, and the manner of service are reasonable, sufficient, and appropriate. The Notice: describes the case and the legal claims; describes the essential terms of the settlement; discloses the benefits or incentives to Lee; provides information regarding Class Counsel's attorneys' fees and costs; informs the recipient about his/her right to participate (and to not participate) in the settlement; explains how each recipient's Settlement Payment was determined; explains the recipient's release of claims of he/she decides to participate; and prominently displays the contact information for the parties' counsel and the procedure for making inquiries. **Exhibit B**.

The Settlement Administrator will distribute the Notice Packet, which consists of the Notice and a Settlement Payment check to each member of the putative collective via First Class U.S Mail to the individuals' last known addresses. **Exhibit A**, ¶¶ 3.3.2.3, 3.4.3.1. If any Notice Packets are returned undeliverable, the Settlement Administrator will conduct a skip-trace using the person's social security number to obtain a new address and shall then re-mail the Notice Packet to the new address via First Class U.S. mail. *Id*. at ¶ 3.4.3.1.

Delivery of the Notice Packet via first class U.S. mail is reasonable and appropriate. *See, Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (stating that "[i]t is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive the 'best notice practicable under the circumstances.'")

19

Because the parties' Notice fully informs the recipient of his or her rights, the effects of (non) participation, and how to participate, the Notice, attached hereto as **Exhibit B**, and the manner of service are reasonable, sufficient, appropriate and should be approved by the Court.

## LEE'S SERVICE AWARD IS APPROPRIATE AND SHOULD BE APPROVED

The parties have agreed that Lee will receive a Service Award, subject to Court approval, in an amount not to exceed Twenty Thousand Dollars ($20,000.00). UL has agreed to and does not oppose the amount of this Award. ***Id.*** at ¶¶ 1.22, 4.2.

The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to incentive awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (noting that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"). The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Lee's Service Award was agreed-upon between the parties and negotiated separately from the amounts or compensation settled upon for the putative collective. Thus, ultimately, approval of Lee's Service Award by this Court will not affect, in any way, the Settlement Payments to the collective. *See* **Exhibit A**, ¶ 4.2.

Demonstrating the appropriateness of the service award, Lee brought the Lawsuit on behalf of himself and all others similarly situated while actively employed at UL. Indeed, Lee remained actively employed at UL through the date the parties reached an agreement in principle to resolve this case. (Walcheske Decl., ¶ 24.) Thus, Lee inherently risked retaliation and other adverse

20

employment actions as a result of his decision to pursue the Lawsuit. (*See id.* at ¶ 25.) Reflecting this reality, Lee is not only the Named Plaintiff in this case, but also its only opt-in to date. (*Id.* at ¶ 26.)

Because Lee effectively brought the Lawsuit alone, Class Counsel was highly dependent upon Lee in pursuing his claims and could have never achieved the result it did on behalf of the collective without his assistance. (*Id.* at ¶ 26.)

For such reasons, the Service Award agreed-upon by the parties is more than reasonable given his courage in stepping forward, his assistance to Class Counsel in this matter, and the Maximum Settlement Amount obtained on behalf of the putative collective. (*See id.* at ¶¶ 21, 24-26.)

## CLASS COUNSEL'S ATTORNEYS' FEE AWARD IS APPROPRIATE AND SHOULD BE APPROVED

Lee's counsel, Walcheske & Luzi, LLC, has moved for an award of its reasonable attorneys' fees, subject to Court approval, in an amount not to exceed a total amount of Five Hundred and Forty Thousand Dollars ($540,000.00), which UL does not oppose. **Exhibit A**, ¶ 4.2. Class Counsel has agreed to waive reimbursement of its litigation costs in pursuing this matter. ***Id.*** UL does not contest Class Counsel's attorneys' fee award. ***Id.***

The parties have been actively litigating this matter since its inception two (2) years ago on November 21, 2017. (ECF No. 1.) Over the course of that entire period, Lee has maintained that UL misclassified him and all others similarly situated as exempt for overtime compensation purposes, while UL has maintained that all such individuals are properly classified. (Walcheske Decl., ¶ 19.)

21

Class Counsel thoroughly investigated Lee's claims, engaged in substantive discovery and other litigation efforts, and engaged in extremely lengthy and rigorous negotiations to reach a final resolution of Lee's claims on behalf of himself and all others similarly situated. Indeed, over the more than twenty-three (23) months Class Counsel has invested into investigating, litigating, and negotiating Lee's claims, Class Counsel: investigated Lee's claims; prepared and filed his Complaint and Amended Complaint; engaged in written discovery; engaged in motion practice when necessary; obtained and reviewed thousands of documents produced by UL, including, but not limited to, time and compensation records for members of the putative collective; conducted extensive research into various legal arguments by both parties; communicated, negotiated, and argued with counsel regarding the scope of the putative collective; exchanged and argued legal positions with counsel regarding the collective, the scope of the collective, certification under the FLSA, the scope of information to be disclosed, the job duties and responsibilities of putative collective members, the inappropriateness of the putative collective's classification as exempt for overtime compensation purposes, and the "correct" method of computing the putative collective's damages; communicated and negotiated with counsel regarding the terms, conditions, timelines, processes, and procedures of settlement; prepared different damages models based on information and data obtained from UL; evaluated damages, generally; and prepared for and participated in a day-long mediation with UL. (*Id.* at ¶¶ 7, 11-18.) As a result of both parties' diligent efforts, they were able to reach a resolution for Lee and the collective short of additional litigation.

At the outset of this litigation, Class Counsel agreed to be solely responsible for all attorneys' fees and costs in the event of an adverse result. (*Id.* at ¶ 7.) In exchange for accepting such risk, Lee agreed to pay Class Counsel forty percent (40%) of any potential recovery, exclusive of costs, should a recovery be obtained. (*Id.*) Of its own volition, and to ensure a fair and reasonable

22

recovery by the collective, Class Counsel has agreed to seek only one-third (33%) of the Maximum Settlement Amount and has agreed to waive reimbursement of its litigation costs. (*Id.* at ¶ 8.) As of the date of this Brief, Class Counsel has not received any compensation for its attorneys' fees or reimbursement for its litigation costs. (*Id.* at ¶ 9.)

As a result of Class Counsel's efforts on behalf of Lee and the putative collective on whose behalf he brought the Lawsuit, Lee obtained a Maximum Settlement Amount of $1,620,000.00. **Exhibit A**. Of that amount, $1,060,000.00 is allocated to the collective.

Settlement at this level represents an outstanding result for the collective. The amount allocated to the collective is representative of what each member of the collective would be legally entitled to in overtime compensation under the FLSA during the period covered by the parties' settlement if Lee ultimately prevailed on liability in this matter.

Given UL's denial of any liability to Lee and the collective, as well as its available affirmative defenses, Class Counsel faced significant risks in litigating this matter – including not obtaining conditional certification, obtaining conditional certification only to suffer decertification, the potential that Lee's claims would not succeed on the merits, and that, even if Lee was successful on the merits, that such success would be partial or otherwise affected or reduced by UL's defenses – risks that could result in Class Counsel being left solely responsible for all attorneys' fees and costs incurred in litigating this matter. In light of these significant risks, Lee agreed to compensate Class Counsel at a rate of forty percent (40%), exclusive of costs, in the event of a recovery. (Walcheske Decl., ¶ 7.)

Class Counsel, of its own volition, seeks approval of its attorneys' fees at a reduced rate of one-third (33.33%) of the Maximum Settlement Fund, and has also agreed to waive reimbursement of its litigation costs. (*Id.* at ¶ 8.) Class Counsel has and will continue to represent the interests of

23

the putative collective until the terms of the parties' Settlement Agreement are completely satisfied.

In the Seventh Circuit, "common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994). Indeed, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Id.* at 563.

The Seventh Circuit utilizes a "market-based approach" to setting the percentage of a settlement fund to be awarded as reasonable attorneys' fees. *See, e.g., Silverman v. Motoroloa Sols, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (finding that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."). In applying this standard, a court is not required to "monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003).

In keeping with this approach, this Court has repeatedly recognized a contingency fee of one-third (33.33%) as fair and reasonable in settlement fund settlements. *See, e.g., Ehmann v. Pierce Mfg., Inc.,* No. 1:16-CV-00247-WCG, ECF Nos. 143, 151; *Frank v. Gold Cross Ambulance Serv., Inc.*, 1:13-CV-01149-WCG, ECF Nos. 24, 31. Further, such a contingency fee is demonstrably consistent with the market rates for this geographic area. (*See* Declaration of Attorney Larry A. Johnson, ¶¶ 6-8; Declaration of Attorney Summer Hart Murshid, ¶¶ 6-8.) Moreover, a one-third (33.33%) contingency fee recognizes the significant risks assumed by Class Counsel at the outset of the case, as well as the favorable result achieved on behalf of the collective.

24

The fee award sought by Class Counsel will fairly and reasonably compensate it for its efforts in investigating, prosecuting, and resolving Lee's claims on his behalf and on behalf of the collective, taking into account the quality, nature, and extent of Class Counsel's efforts, the results and benefits achieved for the collective, and the economies provided by the judicial system by achieving the results and benefits through settlement. Accordingly, this Court should approve the same.

## CONCLUSION

For all of the reasons stated above, the parties respectfully request that the Court enter an Order that: (1) approves the terms and conditions as memorialized in the parties' written Settlement Agreement, attached hereto as **Exhibit A**, as fair, reasonable, and adequate; (2) enters Final Certification for settlement purposes of a collective action pursuant the FLSA, 29 U.S.C. § 216(b); (3) approves Plaintiff's Service Award as fair and reasonable; (4) approves Class Counsel's attorneys' fee award as fair and reasonable; (5) approves the Notice that will be sent to the members of the collective, which is attached hereto as **Exhibit B**; (6) establishes that the Notice constitutes the best notice practicable under the circumstances, including individual notice to all members of the collective who can be identified with reasonable effort, and that the Notice constitutes a valid, due, and sufficient notice to members of the collective in full compliance with the requirements of applicable law; (7) authorizes and orders the Settlement Administrator to distribute the Notice Packet consisting of the Notice and each individual's Settlement Payment to all members of the collective; (8) orders each member of the putative collective who wishes to participate in this case and make a claim under the parties' Settlement to cash, deposit, or otherwise negotiate his or her Settlement Payment per the Notice and within sixty (60) calendar days of the date the Settlement Administrator mailed the Notice Packet; (8) enters judgment or, alternatively,

tentatively schedules a telephonic hearing approximately one hundred and twenty (120) days after

entry of the Approval Order to be held only in the event the Court desires to discuss the status of

the settlement administration and, otherwise, to enter judgment and dismiss this matter with

prejudice; and (9) in the event the Court chooses to tentatively schedule a telephonic hearing with

the parties, orders that at least ten (10) calendar days prior the tentatively scheduled telephonic

hearing, Class Counsel shall file an update with the Court regarding Settlement Administration.

Dated this 21st day of November, 2019.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

 s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Matthew J. Tobin, State Bar No. 1065635
WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: mtobin@walcheskeluzi.com

WINSTON & STRAWN, LLP
Counsel for Defendant

 s/ Michael P. Roche
Michael P. Roche
Shane W. Blackstone

WINSTON & STRAWN, LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Phone: (414) 273-2100
E-Mail: mroche@winston.com
E-Mail: sblackstone@winston.com

26